### Application of Wilhelm AHLERT and Ernst Kruger.
### Patent Appeal No. 8452.

United States Court of Customs and Patent Appeals.
March 18, 1971.

John J. McGlew, David Toren, New York City, Alfred E. Page, Tarrytown, N. Y., Bernard X. McGeady, New York City, attorneys of record, for appellants.

S. Wm. Cochran, Washington, D. C., for the Commissioner of Patents. Jere W. Sears, Washington, D. C., of counsel.

Before RICH, ALMOND, BALDWIN and LANE, Judges, and FORD, Judge, United States Customs Court, sitting by designation.

LANE, Judge.

This appeal is from the decision of the Patent Office Board of Appeals affirming the rejection of claims 1–6 of application serial No. 514,751, filed November 24, 1965, for Method for Alumino-Thermic Welding of Rails, as a continuation-in-part of application serial No. 227,913, filed October 2, 1962. We affirm.

The invention relates to a method of welding together the ends of rails by using a mold enclosing the rail ends, as pointed out in representative claim 1:

In the alumino-thermic welding of the ends of rails each having a head, a base and a web interconnecting the head and the base, by the intermediate casting technique using a mold defining a cavity and embracing oppositely arranged rail ends having a gap therebetween, and utilizing gaseous burner means for heating the facing rail ends prior to the introduction of molten alumino-thermic steel into such gap, the improved method comprising the steps of:

providing a mold having interior wall portions with surface areas defining a cavity having a cross section, transversely of the rail ends, substantially congruent with the transverse cross section of the rail ends;

fixing said mold in operative and laterally embracing substantially sealing relation with the rail ends in advance of such heating of the facing rail ends, and with said surface areas in substantially contiguous relation with the laterally outer surfaces of the rail ends;

directing flame from gaseous burner means downwardly between the facing rail ends embraced by the mold to preheat the facing rail ends without excessive heating of the rail bases;

and thereafter, with the mold remaining in its initially fixed position, introducing alumino-thermically produced molten steel into the cavity to fuse the facing rail ends and form an intermediate casting uniting the fused rail ends and characterized by the substantial absence of laterally projecting beads.

Claims 2–6 are dependent claims. Claim 2 recites that a portion of the interior wall of the mold contiguous to the rail web is made from refractory material. Claim 3 specifies that the refractory material is magnesite. Claim 4 recites that the refractory material has good heat conductive properties. Claim 5 specifies silicon carbide refractory material. Claim 6 recites that the mold is a two-part separable mold. Claims 1, 2, and 6 stand rejected as unpatentable under 35 U.S.C. § 103 over Delachaux.[1] Claims 1, 2, 4, 5 and 6 stand rejected as unpatentable under section 103 over Delachaux in view of Ahlert.[2] Claim 3 stands rejected under section 103 over Delachaux in view of Gelfand,[3] and the "Thermit Welding" publication.[4] The board's decision also lists Gross[5] and Ahlert,[6] made of record by the examiner.

1. U. S. Patent 1,607,118, issued November 16, 1926.

2. U. S. Patent 3,007,217, issued November 7, 1961.

3. U. S. Patent 3,020,608, issued February 13, 1962.

4. *Thermit Welding*, published by Metal and Thermit Corp., pp. 8–9, March 31, 1947.

5. U. S. Patent 1,557,453, issued October 13, 1925.

6. U. S. Patent 2,932,863, issued April 19, 1960.

The board adopted by reference the reasoning set forth in the examiner's answer with regard to the rejection utilizing the first four references.

Figure 2 of the application drawings discloses a mold which may be used in the practice of the claimed methods.

[A3716]

Fig. 2

The mold 1 comprises two mold halves enclosing rail ends 2 having the usual head, web and foot shape in cross section. The mold halves are provided with upward channels therein for the exit of combustion gases produced by a burner above the head which directs flames downward between the rail ends to preheat the rails before alumino-thermically produced molten steel is introduced to fuse the rail ends together. Interior wall portions 4 and 4' of the mold located below the rail head and adjacent the rail webs are made from refractory material. The interior wall portions of the mold defining a cavity for the rail ends to be joined are disclosed as substantially congruent with and bearing snugly

against the exterior of the rails 2. This substantially congruent shape of the mold is said to overcome premature melting of the rail profile during preheating and to prevent the formation of protruding beads along the welded gap.

Appellants emphasize that their methods, in order to overcome the prior art problem of excessive heating of portions of the rail when using molds having relatively large interior cavities, use a mold having interior wall portions with surface areas defining a cavity having a cross section substantially congruent with the transverse cross section of the rail ends. The *substantially congruent* limitation appears in all the claims on appeal.

Delachaux discloses a method and apparatus for repairing the worn tread surfaces adjacent to the ends of rails by alumino-thermic welding. The Delachaux method utilizes preheating and employs a two-part mold clamped around the end portion of a rail head and a portion of the rail web. The mold has interior wall portions engaging the rail head and web portions adjacent to the ends of each rail, and provides a cavity of substantially the size and contour of the original rail section to allow the worn tread to be restored. The Delachaux specification states:

The method aforesaid consists in adjusting and applying to the damaged rail a mold similar to that employed in effecting the alumino-thermic welding of the rail joints, which will enclose the portion of the rail to be repaired and restored.

Ahlert '217 discloses a mold for the alumino-thermic welding of the *ends* of rails, and portions of the mold adjacent the rail web are said to be formed of silicon carbide, having good heat conductivity. Ahlert '217 specifically refers to

the prior Ahlert '863 patent, which is also mentioned in the appellants' application. The Ahlert molds are illustrated here:

FIG. 1

[A3717]

FIG. 2.

[A3718]

Claim 1, supra, recites a method broadly comprising four steps, namely, providing a mold, fixing the mold in relation to rail ends, directing a flame to preheat, and introducing molten steel. Appellants' specification acknowledges

at the outset that the broad process was generally known in the art, and it discusses Ahlert '863. Appellants assert that their improved method involves the use of a mold having interior wall portions with surface areas defining a cavity having a cross section, transversely of the rail ends, substantially congruent with the transverse cross section of the rail ends. The examiner found that it would have been obvious to utilize the Delachaux teaching of a mold having a mold cavity substantially the size and contour of the original rail section. The board adopted the examiner's reasoning and stated:

> * * * We will only note, by way of emphasis, that Delachaux teaches that the alumino-thermic welding of rail joints is old in the prior art, (page 1, lines 95–96) and would, in our opinion, suggest forming the mold cavity "of substantially the size and contour" of the rail sections (page 1, lines 103–105) and preheating the joint while the mold is in place by a flame from gaseous burner means (page 2, lines 70–89). It is further our opinion that the downward extension of mold 5 of this patent to enclose the remaining portion of the sections would not involve anything unobvious either in adaptation or in result.

Appellants' argument that Delachaux is non-analogous art is not persuasive. The alumino-thermic welding of the worn tread of rail heads adjacent to rail ends involves some of the same problems encountered in alumino-thermically welding rail ends together to provide a continuous smooth tread. Delachaux, in the passage quoted supra, specifically states that his mold is similar to that employed in welding rail joints. We find nothing in any of the references of record which would have led a person of ordinary skill to believe that his closely fitting mold would not be suitable for use in welding rail joints.

The rejection of claims 1, 2 and 6 as obvious over Delachaux is affirmed. Delachaux discloses a two-part separable mold as recited in claim 6 and only ordinary skill is utilized in making portions of a mold from refractory material as recited in claim 2. Likewise, the rejection of claims 1, 2, 4–6 over Delachaux in view of Ahlert '217 is affirmed. The recital in claim 4 that the refractory material has good heat conductive properties and in claim 5 that the material is silicon carbide is taught by Ahlert's disclosure of the use in certain mold locations of silicon carbide of good heat conductivity. The rejection of claim 3 as obvious over Delachaux in view of Gelfand and the Thermit Welding publication is also affirmed. The publication discloses magnesite molds for thermit welding. The Gelfand patent shows the use of dolomite molds for the alumino-thermic welding of the end of a cable to the end of a rod. Dolomite is a calcium-magnesium carbonate and analogous to magnesite, which is a magnesium carbonate.

The board's decision in specifying the grounds of rejection does not rely on the Gross patent, which was mentioned by the examiner as helpful in understanding the state of the art. We find it unnecessary to rely on Gross or to consider appellant's argument that the Gross method and apparatus are inoperable.

Since the alleged improvement in appellants' claimed methods is said to reside in the use of a mold having interior surfaces substantially congruent with the transverse cross section of the rails, and since we find that it would have been obvious from the prior art to provide molds with such substantially congruent surfaces in alumino-thermic welding methods, the decision of the board is affirmed.

Affirmed.